# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **CHAD E. GOINS,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:19CV00673 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **JEFFERY KISER, ET AL.,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendants. ) | |

*Chad E. Goins, Pro Se Plaintiff; Laura H. Cahill,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for Defendants.*

The plaintiff, Chad E. Goins, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. Goins asserts that the defendant prison officials at Red Onion State Prison ("Red Onion") have denied him access to bathroom facilities during Sunni Muslim group services. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted and that Goins's Motion for Preliminary Injunctive Relief must be denied.

I.

At times relevant to his current claims, Goins has been confined at Red Onion in the custody of the Virginia Department of Corrections ("VDOC"). Goins explains

that salah, a form of prayer, is one of the five pillars of the Islamic religion. "The purification of the body from impurities before one enters the salah is *obligatory*, according to the Quran and Sunnah," and "[s]alah is not accepted without purification." Compl. 8, ECF No. 1. In addition, "[s]ever[e] pressure of the call of nature invalidates the salah." *Id*. at 9. Accordingly, if an adherent needs to relieve himself, he should do so before performing the salah, so that he can properly concentrate on his salah. And after an adherent performs any bodily function such as "urinating, defecating, [and] passing gas," his salah "will not be accepted . . . until he performs wudu," the purification of the body. *Id*. at 10.

On December 21, 2018, during the Friday Sunni Muslim services in the dining hall at Red Onion, Goins asked permission to use the restroom off the hall. An officer told him that inmates were not permitted to access that restroom during the service. Even after Goins explained that his beliefs required him to use the restroom before prayer, the officer refused him access. Goins states that services are monitored by one or more in-room officers, two officers in the control booth, and a K-9 officer outside the chow hall door with his canine. Goins contends that such supervision should eliminate any security risk created by inmates purifying themselves in the restroom before performing their salah prayers.

Goins filed an Informal Complaint about the December 21, 2018, incident. Lieutenant G. Adams responded that bathrooms are not available to inmates while

in the chow halls, so they should use bathroom facilities before attending services. On December 26, 2018, Goins sent a letter to Major Tate, explaining why access to a restroom during Sunni Muslim religious services was important to his beliefs. Tate did not reply.

Goins filed a Regular Grievance about the bathroom issue in January 2019. Institutional Grievance Coordinator J. Messer rejected the Regular Grievance upon intake, because nothing had changed within the last thirty days regarding the issue of bathroom access in the dining hall. The Regular Grievance was not logged. Goins' appeal was unsuccessful.

In his § 1983 Complaint, Goins sues Red Onion Warden Jeffery Kiser, VDOC Western Regional Ombudsman Bivens, Major Tate, Lieutenant Adams, and Messer. Liberally construed, Goins's Complaint asserts that the defendants have not ensured him access to a bathroom during his religious services, in violation of his right to free exercise of his religious practices. As relief, he seeks monetary, declaratory, and injunctive relief. Goins also has a pending Motion for Preliminary Injunctive Relief on this issue.

The defendants have responded with factual opposition to Goins's request for an injunction and have moved for summary judgment as to his Complaint. Resp. Opp'n Prelim. Inj., Fuller Aff., ECF No. 22-1; Mem. Supp. Mot. Summ. J., ECF No. 27. According to the defendants' evidence, the dining hall restroom has a solid,

windowless door that may be locked from the inside. This room also serves as a cleaning closet and, as such, contains a mop and sink, in addition to a toilet. For security reasons, this room is not, nor has it ever been, intended for inmate use and is authorized for facility staff use only. Red Onion policy requires staff to keep all closet and office doors secured when inmates are out of their cells to prevent inmates from entering areas where security staff may not observe their activities. If one of these areas needs to be cleaned by inmates approved for such work, officers are to remain outside the area with the door open so that the inmate's activities can be observed.

Allowing an inmate to enter the dining hall restroom during services would give him an opportunity to lock himself inside. Staff would be unable to observe his activities or to quickly access the room, if locked from the inside. Under these circumstances, an inmate could potentially take a hostage, be in distress, or be attempting to harm himself in the locked restroom, while officers would be unable to observe or to intervene or provide assistance promptly. Inmates entering the dining hall for services must first undergo a frisk search. The ability to enter the restroom and lock its door would provide an opportunity for an inmate to retrieve contraband hidden on his person and undetected during the frisk. Inmates housed in different units would also have an opportunity to exchange communications or contraband for unauthorized reasons such as gang affiliation.

The defendants offer evidence that inmates at Red Onion are informed well in advance of the scheduled day and time for each group religious service. In addition, an announcement is made in each housing unit before the "first call for a particular religious service and then again prior to the final call." Fuller Aff. at ¶ 10, ECF No. 22-1. These announcements are timed to give inmates ample opportunity to use the bathroom and wash up before attending the service. Furthermore, if an inmate attending a religious service in the dining hall needs to use the restroom, he may be escorted back to his housing unit to do so and then escorted back to the dining hall to resume participation in the service.[1]

Goins has responded to the defendants' evidence, making these matters ripe for disposition. According to Goins, officers do not always announce when a Sunni service is scheduled to begin. He states that during prior periods when he was incarcerated at Red Onion, inmates could use the dining hall bathroom. He also avers that officers can use a key to deactivate the lock to the dining hall bathroom to prevent any inmate from locking himself inside that room. Goins explains that Muslim inmates are forbidden by their beliefs from using the bathroom at the same time, that no active gang members attend the Sunni Muslim service, and that

---

[1] Defense counsel represents that this policy — allowing escort of an inmate to his housing unit for use of the bathroom and return to a religious service — took effect as of February 24, 2020.

exchange of contraband or information after the frisk search could occur at any time during the service, without the privacy of the restroom. Goins also claims that Islam requires concentration during a service. It forbids worshipers from talking and from distracting actions such as leaving and returning to a service in progress. Furthermore, according to Goins, an inmate's ability to return to a housing unit and come back to the service, which first began recently, in February of 2020, is dependent on staff availability.

II.

A. Money Damages Claims.

Some of Goins' claims for monetary damages fail at the outset. The defendants are protected by immunity against damage claims for actions taken in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Moreover, monetary damages are not available under RLUIPA for any of the defendants' alleged actions. *See, e.g., Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (finding damages not recoverable against defendants in their official capacities under RLUIPA); *Rendelman v. Rouse*, 569 F.3d 182, 188-89 (4th Cir. 2009) (finding no RLUIPA claim for damages available against defendants in their individual capacities).² Therefore, I will grant summary judgment for the defendants

---

² These cases address the immunity question only as it pertains to RLUIPA as an exercise of congressional spending power, although the statute also invokes congressional commerce power. *See* 42 U.S.C. § 2000cc-1(b). I am satisfied that Goins' Complaint does

-6-

on all claims for monetary damages against the defendants in their official capacities and all claims for monetary damages under RLUIPA.

B. The First Amendment and RLUIPA.

To survive the defendants' Motion for Summary Judgment, Goins must present material disputed facts that would persuade a jury to rule in his favor.[3] I cannot find that Goins has met this burden.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."[4] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). "This [right] encompasses policies that impose a substantial burden on a prisoner's right to practice his religion." *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014). For

---

not present a factual basis for a claim of monetary damages under the Commerce Clause nexus of RLUIPA. *See, e.g., Rendelman*, 569 F.3d at 189.

[3] A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* I must draw all reasonable inferences from the facts in favor of Goins, the nonmoving party. *Williams v. Staples*, *Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

[4] The First Amendment proscribes "law[s] respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I, §§ 1, 2. It applies to state governments through the Fourteenth Amendment. *Bd. of Educ. of Kiryas v. Grumet*, 512 U.S. 687, 690 (1994).

constitutional purposes, such a burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces him to "choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).[5]

Similarly, "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (unpublished) (citing 42 U.S.C. § 2000cc-1(a)(1)–(2)). In a claim under RLUIPA, the inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise."[6] *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). For purposes of a RLUIPA claim, "a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial

---

[5] Only if Goins establishes that the prison's policy substantially burdens his religious practice must the court continue the constitutional analysis to determine whether the policy survives his challenge, because "'it is reasonably related to legitimate penological interests.'" *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

[6] Only if the inmate proves that there is a substantial burden on his religious practice, does "the burden shift[] to the government to prove its policy furthers a compelling governmental interest by the least restrictive means" as required to prevail against an inmate's RLUIPA claim. *Incumaa*, 791 F.3d at 525.

pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas*, 450 U.S. at 718).

> The availability to an inmate, in the most general sense, of other means to practice his or her faith is not relevant to the RLUIPA substantial burden inquiry. *Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009) (unpublished). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity . . . in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden."

*Shabazz v. Johnson*, No. 3:12CV282, 2015 WL 4068590, at *8 (E.D. Va. July 2, 2015) (citations omitted) (finding no substantial burden where Muslim inmate could self-select from available food items to eat only once per day and consume only acceptable, vegetarian foods). Moreover, prison practices do not substantially burden an inmate's rights if they merely make his "religious exercise more expensive or difficult," but are "not inherently inconsistent with [his] beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 735, 739 (6th Cir. 2007) (unpublished); *see also Marron v. Miller*, No. 7:13CV00338, 2014 WL 2879745, at *2 (W.D. Va. June 24, 2014) ("No substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion.") (citation omitted); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("[I]n the context of RLUIPA's broad definition of religious exercise, a . . .

regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable.").

After careful review of the parties' evidence, I conclude that Goins has not stated facts on which he could persuade a fact finder that the bathroom usage policy he challenges has placed a substantial burden on his religious practice of bodily purification. Rather, the undisputed evidence is that Red Onion has taken substantial steps to accommodate this facet of Sunni Muslim practice. The weekly service occurs at a regularly scheduled time every Friday. Inmates wishing to participate can plan into their Friday schedules whatever steps they must take to purify themselves *before* the meeting time and, to the extent physically possible, to *avoid* the need to pass gas, urinate, or defecate during that service. In addition, prison officials have also scheduled two, spaced time warnings before the service each week. These warnings assist in prompting inmates to address purification needs in their housing unit facilities before leaving for the dining hall.[7]

If, despite these opportunities to purify himself, an inmate experiences a need for a bathroom break during the service, he may return to his housing unit, use the

---

[7] Goins' claim that officials sometimes fail to give the pre-service warnings suggests negligent oversight at the most. Negligent interference with a religious practice does not support a claimed violation of either the First Amendment or RLUIPA. *Lovelace*, 472 F.3d at 194.

bathroom there, and return to complete the service afterward. Goins' complaint that such a bathroom break improperly distracts from the service rings hollow, as he fails to explain why using the forbidden bathroom near the dining hall would be any less distracting. Moreover, by his own admission, it is his own bodily function that interrupts the effectiveness of his personal prayers. When such an interruption occurs, he can then choose his course of action — to leave the service and briefly distract others from their prayers, or to wait to relieve or wash himself until after the service and thereby avoid distracting others.

Based on the foregoing, I cannot find that Goins has established a triable fact on which he could show a substantial burden on the purification aspect of his religious practice.[8] Accordingly, I conclude that the defendants are entitled to summary judgment as a matter of law, and that Goins' motion seeking interlocutory injunctive relief must be denied.[9]

---

[8] Because I herein conclude that Goins has not met the substantial burden aspect of his First Amendment and RLUIPA claims, I need not reach the other aspects of these claims. Thus, any factual disputes about the defendants' stated security reasons for denying inmates access to the dining hall bathroom are not material to resolution of the case.

[9] Because preliminary injunctive relief is an extraordinary remedy, the party seeking such relief must make a clear showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of these four factors must be satisfied. *Id.* Because Goins has not demonstrated success on the merits of his claims, he cannot satisfy this four-factored standard.

III. Conclusion.

For the reasons stated, it is **ORDERED** as follows:

1. The defendants' Motion for Summary Judgment, ECF No. 26, is GRANTED; and

2. The plaintiff's Motion for a Preliminary Injunction, ECF No. 18, is DENIED.

A separate Judgment will enter forthwith.

ENTER: May 18, 2020

/s/ JAMES P. JONES
United States District Judge